3 So.3d 1239 (2009)
In re AMENDMENTS TO FLORIDA RULE OF JUVENILE PROCEDURE 8.255.
No. SC08-1236.
Supreme Court of Florida.
February 27, 2009.
Herbert Baumann, Jr., Chair, Steering Committee on Families and Children in the Court, Thirteenth Judicial Circuit, Tampa, FL, for Petitioner.
Dennis W. Moore, General Counsel, Kristen Krueger-Griswold, Deputy General Counsel, Statewide Guardian Ad Litem *1240 Office, Tallahassee, FL, and Thomas Wade Young of Dempsey and Associates, P.A., for Statewide Guardian Ad Litem Office, Winter Park, FL, on behalf of The Guardian Ad Litem Program; and David Neal Silverstein, Chair, Juvenile Court Rules Committee, Tampa, FL, and John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, FL, on behalf of the Juvenile Court Rules Committee, Responding with comments.
PER CURIAM.
This matter is before the Court for consideration of proposed amendments to the Florida Rules of Juvenile Procedure. We have jurisdiction. See art. V, § 2(a), Fla. Const.
The Steering Committee on Families and Children in the Court (Steering Committee) has filed a petition seeking to amend Florida Rule of Juvenile Procedure 8.255, General Provisions for Hearing. The petition was filed in conjunction with the Steering Committee's Report containing administrative recommendations in response to the charges given to the Steering Committee in the Court's August 30, 2006, administrative order. In re Steering Committee on Families and Children in the Court, Fla. Admin. Order No. AOSC06-30 (Aug. 30, 2006) (on file with Clerk, Fla. Sup.Ct.). The Steering Committee was charged with, among other things, "[e]xamin[ing] the role of courts in dependency cases in which children leave the foster care system without a permanent family, such as when the child reaches adulthood and `ages out' of the foster care system." Id. at 2. Additionally, the Steering Committee was asked to "develop recommendations for courts handling these cases and formulate an action plan for implementing those recommendations by the court system." Id.
The Steering Committee's proposed amendment to rule 8.255 would require a child who is in licensed foster care or foster care with "another planned permanent living arrangement" goal, and who is at least sixteen years old, to attend all court hearings, unless the child's presence is excused based on a showing of good cause. The amendment also would permit any party to file a motion to excuse the presence of the child. The Steering Committee states that the proposed amendment is intended to implement section 39.701(6)(a), Florida Statutes (2008). That section requires the court in dependency proceedings to hold a judicial review hearing within ninety days after a child's seventeenth birthday and requires that the child "be given the opportunity to address the court with any information relevant to the child's best interests, particularly as it relates to independent living transition services." § 39.701(6)(a), Fla. Stat. (2008). The Steering Committee states that current court practices vary as to whether children appear at dependency case hearings, including judicial review hearings. In support of its proposal, the Steering Committee asserts that a child's personal appearance in court affords the best opportunity for the court to carry out legislative intent under section 39.701(a)(1)-(10), Florida Statutes (2008), that children who are "aging out" of the dependency system are receiving appropriate services and are prepared for adulthood. The Steering Committee states that its proposal requires court attendance by children who are at least sixteen in order to ensure that the age group specified in section 39.701(6)(a) is able to meaningfully "address the court" as anticipated by the statute.
The Steering Committee's proposed amendment to rule 8.255 was published for *1241 comment, and two comments were filed, one from the Statewide Guardian Ad Litem Office (GAL) and one from the Juvenile Court Rules Committee (Rules Committee). The Steering Committee, the GAL, and the Rules Committee also participated in oral argument in this case, which was held on February 3, 2009.
After consideration of the Steering Committee's proposal, the comments, and the parties' presentations at oral argument, we decline to adopt the amendment to rule 8.255. Rule 8.255 already recognizes a child's right to be present at hearings in dependency cases regardless of the child's age, and while we agree with the Steering Committee that, in many instances, a child's presence and meaningful participation in dependency proceedings is critical, the Legislature has already clearly spoken with regard to the issue the Steering Committee seeks to address. Section 39.701(6)(a) requires the court in dependency proceedings to hold a judicial review hearing within ninety days after a child's seventeenth birthday and continue to hold timely judicial review hearings thereafter. § 39.701(6)(a), Fla. Stat. (2008). Further, at each judicial review hearing held under section 39.701(6)(a), the statute requires that "the child shall be given the opportunity to address the court with any information relevant to the child's best interests, particularly as it relates to independent living transition services." Id. In addition, the Department of Children and Family Services must provide the court with written verification that the child "[h]as been encouraged to attend all judicial review hearings occurring after his or her 17th birthday." § 39.701(6)(a)(10), Fla. Stat. (2008). The Steering Committee's proposal is at variance with these clear provisions, and thus, we decline to adopt it.
Although we decline to adopt the proposed amendment, we agree with the Committee's well intended goal of increasing appropriate attendance and meaningful participation of youth in dependency proceedings, especially those "aging out" of the system and preparing for independent living. We would also encourage those involved in the dependency process to seek legislative action to further this goal. We also thank the Steering Committee, the Guardian Ad Litem Program, and the Juvenile Court Rules Committee for their tireless service and, specifically, for their invaluable participation in the Court's consideration of these important issues.
It is so ordered.
WELLS, CANADY, POLSTON, and LABARGA, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE, C.J., and LEWIS, J., concur.
PARIENTE, J., dissenting.
I dissent because I would adopt the proposed rule, with minor modifications, as proposed unanimously by the Supreme Court's Steering Committee on Families and Children in the Court.[1] The rule, which requires the presence of a child who is eligible for independent living and who is at least sixteen years of age, is procedural, does not conflict with any statute, and enhances rather than frustrates the Legislature's commitment to children who *1242 are eligible for independent living services. As the committee states in its petition:
The Steering Committee has considered how best to assist youth who are undertaking the arduous journey from foster children to independent young adults. By amending Rule 8.225 in the manner proposed, courts will be better situated to assist those young people. Moreover, those young people will be better positioned to avail themselves of the services offered to them.
Both the committee and those filing comments regarding the rule, specifically the Office of the Statewide Guardian Ad Litem Program and the Juvenile Court Rules Committee, favor increased participation of youth.[2] In proposing the rule to the Court, the Committee identified "the nonattendance of youth at risk of `aging out' of the foster care system as an issue that impedes the success of youth."
The majority rejects the rule, however, not because it disputes the benefits of increased participation by foster care youth, but rather on the narrow ground that the majority believes it conflicts with the substantive statute. To this end, the majority cites specific portions of chapter 39 which require that (1) a judicial review hearing be held after a child's seventeenth birthday, (2) a child have the opportunity to address the court at the hearing, and (3) the Department of Children and Family Services verify that the child has been encouraged to attend all court hearings occurring after his or her seventeenth birthday. See §§ 39.701(6)(a), 39.701(6)(a)(10), Fla. Stat. (2008). I respectfully disagree.
A procedural rule that requires the child's presence beginning no later than age sixteen effectuates the Legislature's intent "for the Department of Children and Family Services to assist older children in foster care and young adults who exit foster care at age 18 in making the transition to independent living and self-sufficiency as adults." § 409.1451(3)(a), Fla. Stat. (2008). When looking at the statutory framework as a whole, it is clear that the Legislature intended the transition process to begin before the age of seventeen. For example, section 409.1451(3)(b)(1), Florida Statutes, requires that a child age thirteen or older be involved in the development of his or her educational and career path, which is to be reviewed at every judicial hearing as part of the case plan. Further, section 409.1451(4)(c), Florida Statutes (2008), states that a child becomes eligible for subsidized independent living services at the age of sixteen. In addition, a child sixteen years of age or older may choose to remain in foster care, after which the court may approve the child's placement in another planned permanent living arrangement. See § 39.6241(1)(d)(3), Fla. Stat. (2008). Thus, as explained by the committee in its petition, these and a variety of other services are available to sixteen-year-old youth, services that are more likely to be utilized if the child is present at all court hearings.
*1243 The importance of the presence of youth in court before their seventeenth birthday is succinctly explained in the committee's petition:
By the time most youth have reached 17 years of age, the court will likely be conducting only two more judicial review hearings before the youth attains the age of majority.[n. 6] Personal appearance in court by the youth affords the best opportunity for the court to carry out Legislative intent under section 39.701(6)(a)1-10, Florida Statutes, that youth reaching the end of their childhood are receiving services and are being prepared for adulthood.
To wait until a youth reaches the age of 17 to require the youth's presence does not truly effectuate the statute. In actual practice, many youth are not brought to court until after they turn 17, if at all. After appearing in court within 90 days of turning 17, such youth might not appear in court again until a few months prior to reaching the age of majority, when little more can be done to ensure that essential or mandated transitional services have been provided. Moreover, by bringing young adults into court when they are 16 years of age, the court is able to determine that the proper services are already starting to be provided. Youth have more options available at the age of 16 than they do after reaching age 17, such as entering into GED programs and career centers. The decisions that a young person makes while 16 will drive the services required when that person is 17 and older. Therefore, allowing the court direct access to youth in court maximizes the opportunity for meaningful review of the services and training provided to transition the young person successfully to adulthood.
[N. 6] Section 39.701(6)(a), Florida Statutes permits more frequent reviews of the child's status during the year prior to the child's 18th birthday. Such reviews, however, obviously are unable to make up for time and opportunities that are lost to the youth due to services not having been provided.
By proposing the amendment to the rule, the committee furthers our collective goal of taking meaningful steps to maximize the future success of a targeted population within our foster care system.
The micro picture might appear to be insignificant: what difference does it make if the child comes to court to meet face-to-face with the judge? The macro picture is that more than 500,000 American children live in foster care with approximately 24,000 youth "aging out" each year and leaving the foster care system without a support system and at great risk for failure. In 2004 alone, approximately 1300 youth aged out of the Florida foster care system. Madelyn Freundlich et al., Time for Reform: Aging Out and On Their Own, More Teens Leaving Foster Care Without a Permanent Family (The Pew Charitable Trusts, 2007), available at http://www. pewtrusts.org/uploadedFiles/www pewtrustsorg/Reports/Foster_care_reform/ Kids_are_Waiting_TimeforReform0307. pdf. A subcommittee of the Steering Committee also noted that in 2005, more than 4600 youths aged thirteen to eighteen were in Florida's foster care system. Report after report has documented that every year these children, who themselves have been victims of abuse and neglect, leave foster care without completing high school and with significantly greater risk of becoming unemployed, homeless, welfare dependent, incarcerated, ill, and sexually and physically victimized. Deseree *1244 Gardner, Youth Aging Out of Foster Care: Identifying Strategies and Best Practices (Research Division of NACO's (National Association of Counties) County Services Department, Feb. 2008), available at http://www.naco.org/Content/Content Groups/Issue_Briefs/IB-YouthAgingoutof Foster-2008.pdf.
Why do I mention these startling statistics? Because in recognition of this harsh and unnecessary reality, federal legislation has created a framework for assisting youth who are aging out of foster care and each year millions of dollars flow to the states to implement these goals. Id.[3] And undoubtedly the Legislature has passed a host of well-meaning statutes aimed specifically at this targeted population  a population whose numbers are small but whose risk for failure without a network of support services is great.[4]
All that the committee attempts to accomplish by proposing this rule is to maximize the chance of success for this very limited population by requiring the attendance of children at hearings concerning their future. As Judge Herbert Baumann, speaking on behalf of the committee, so eloquently stated during oral argument, every year in this State there are approximately 1500 youth who are eligible for independent living services.[5] As he observed, if any one of those 1500 youth was caught committing a delinquent act, that child would be immediately transported to court. No less should be required when the planning of a child's future is involved.
Beyond the fact that requiring the presence of a child advances the Legislature's goals that seek to ensure that services be provided in a timely manner, the voices of the children themselves in support of this *1245 proposal impressed the committee and impress me. As explained by the committee:
During the Steering Committee's term, the subcommittee met with both current and former foster youth through the organizations Connected by 25 and Florida Children's First. The subcommittee members were greatly impressed by the presentations by these dynamic young adults. They strongly advocated for youth attendance at hearings, particularly at judicial review hearings. For whatever reason, the sheer importance of hearings, especially judicial review hearings, is not fully conveyed to many foster children. As a result, many fail to attend hearings, either because adults have decided that they will not attend or because the youth do not know to insist on attending the hearing. Some youth may not be adequately informed that they have the right to a copy of the judicial review social study report filed with the court or that the hearing affords them direct access to the judge. Obviously, the older the youth, the more important their attendance at the hearing becomes. The experiences and discussions of the current and former foster youth were instrumental in the subcommittee's formulation of the rule proposal.
In my view, the Legislature's intent to prepare older foster youth for adulthood is advanced by a rule requirement of direct interaction between the court and the youth beginning no later than age sixteen. The Steering Committee's proposed rule accomplishes this goal of meaningful interaction between the foster youth and the judge, not through a substantive change in the law, but by proposing a procedural rule to give effect to the various statutes passed by the Legislature to impact this targeted population.[6]
Even with the majority's rejection of the amended rule, it should be highlighted that the rule as presently written, and as set forth by statute, provides that the child has a right to be present at hearings pursuant to rule 8.255(b) unless the Court finds that because of the child's mental or physical condition, a court appearance is not in the child's best interests. I read this rule as ensuring that children have the right to be present and be heard on the important issues affecting their lives. And certainly, as the child becomes a young adult, nothing can be more important than giving the child a voice in planning his or her future, ensuring that the child is aware of the services available, and is in fact taking advantage of and receiving the services provided by statute.
Lastly, the committee advises that foster children are frequently absent from hearings on issues that directly affect them. If this is so, I would urge the Juvenile Court Rules Committee, aided by the GAL and other child advocacy groups, to take steps to strengthen the rule to ensure that the child's presence with a meaningful opportunity to be heard is the rule, and not the exception.
QUINCE, C.J., and LEWIS, J., concur.
NOTES
[1] As the committee's report states, eighty individuals participated in the committee's work during the 2006-2008 committee term, including twenty-two appointed committee members and fifty-eight subcommittee members divided among seven subcommittees according to their expertise.
[2] The importance of the involvement of a child in the transition process has also been stressed by Casey Family Programs, an organization designed to provide and improve and ultimately prevent the need for foster care. In a report on its findings in a survey of young adults, the organization recommended that youth be included in the development of a transition plan "to ensure that they understand and support it." Anne Havalchak et al., The Casey Young Adult Survey: Findings over Three Years (Casey Family Programs, 2008), available at http://www.casey.org/NR/ rdonlyres/0F34595D-A32A-4295-9764-664512E2E3C8/665/CaseyYoungAdultSurvey ThreeYears1.pdf.
[3] In 1999, Congress passed the Foster Care Independence Act. See 42 U.S.C. § 677 (2000 & Supps. 2001-2005). The Act established the Chafee Foster Care Independence Program, the purposes of which include

identify[ing] children who are likely to remain in foster care until 18 years of age and to help these children make the transition to self-sufficiency by providing services such as assistance in obtaining a high school diploma, career exploration, vocational training, job placement and retention, training in daily living skills, training in budgeting and financial management skills, substance abuse prevention, and preventive health activities (including smoking avoidance, nutrition education, and pregnancy prevention).
42 U.S.C. § 677(a)(1) (2000). Under the program, states can apply for federal funding to establish programs designed to assist foster youth in transitioning to independent living. In the fiscal year 2005-06, the Department of Children and Families received an $8.9 million federal grant from the program. Improvements in Independent Living Services Will Better Assist State's Struggling Youth, OPPAGA Report No. 05-61 (December 2005), available at http://www.oppaga.state.fl.us/reports/ pdf/0561rpt.pdf.
[4] Within the past five years, the Legislature has created sections 39.701(6)(a), 743.045, and 743.046. Section 39.701(6)(a) mandates that a judicial review hearing be held within ninety days after a child's seventeenth birthday. Sections 743.045 and 743.046 allow foster youth to execute contracts for the lease of residential property and obtain utility services for such property before reaching the age of eighteen.
[5] Judge Baumann knows of what he speaks. He, along with the committee's chair, Judge Nikki Clark, has been a leader in what have become known as independent living transition dockets designed to ensure that there is a coordinated system of independent living transition services to enable older children in foster care to make the transition to self-sufficiency as adults. See generally Admin. Order No. S-2006-155 (Fla. 13th Cir.Ct. Sept. 28, 2006). There are presently eight specialized dockets around the State that focus on the needs of children ages sixteen and seventeen who are about to age out of the foster care system.
[6] The proposed rule change is a procedural one within the province of the judiciary, similar to our prior adoption of Florida Rule of Juvenile Procedure 8.625, which requires the presence of a child at proceedings unless that child's presence is waived.